STATE OF VERMONT
ENVIRONMENTAL COURT



| | }  | |
|---|---|---|
| **In re ALPH Realty  (63 King Street)** | } | **Docket No. 30-2-08 Vtec** |
| | } | |

*************************************************************************

| | } | |
|---|---|---|
| **In re ALPH Realty  (65–69 King Street)** | } | **Docket No. 31-2-08 Vtec** |
| | } | |

*************************************************************************

| | } | |
|---|---|---|
| **In re ALPH Realty  (131 Archibald and** | } | **Docket No. 32-2-08 Vtec** |
| **7–9 Bright Streets)** | } | |
| | } | |

## Decision on the Merits

Appellant ALPH Realty seeks authority to replace most of the wooden siding on three of its Burlington-area apartment buildings with a substitute siding composed of fiber cement, known by the trade name of "Hardipanel."  When each of its applications was denied by the City of Burlington Development Review Board ("DRB"), ALPH appealed to this Court.

The Court conducted a merits hearing at the Costello Courthouse in Burlington, Vermont, at which the parties presented their evidence and legal arguments, with the assistance of their respective legal counsel, Matthew T. Daly, Esq., on behalf of ALPH, and Kimberlee J. Sturtevant, Esq., on behalf of the City of Burlington ("City").  The Court also conducted a site visit to each of the subject properties and nearby neighborhood properties.  Based upon the evidence presented at trial, including that put into context by the site visits, the Court renders the following Findings of Fact, Conclusions of Law, and Judgment Order that accompanies this Decision.

## Findings of Fact

**A.     General background**

1.     ALPH is the owner of record of the three parcels of improved real property that are the subject of each of the above referenced appeals.  One of its principals, William Bissonette, provided testimony at trial concerning ALPH's real estate operations.

2. ALPH is operated by its principals as a real estate holding and property management entity; it holds title to a number of Burlington-area buildings in which approximately 200 residential apartments are maintained.

3. The ALPH principals purchased their first residential apartment building about thirty-one years ago. Most of the buildings currently held in the name of ALPH were acquired within the last ten years. The general ALPH business plan has been to acquire distressed Burlington-area properties, renovate and rehabilitate the properties as residential rentals, and then either sell or manage these rental properties.

4. Mr. Bissonette has also served as a restaurant owner and construction worker. He and other ALPH principals and employees have had much experience in repairing, replacing, painting, repainting, and maintaining the exterior siding of the various ALPH buildings.

5. In October 2007, ALPH submitted three applications for a Certificate of Appropriateness ("COA") to remove the existing horizontal/linear wooden siding on each of the subject buildings and replace it with a fiber cement board, manufactured to replicate wooden clapboards. Each of ALPH's COA applications was admitted into evidence at trial. (See Exs. G, H, and I.)

6. The fiber cement board ALPH proposes to use is known by its tradename "Hardipanel" and is manufactured by the James Hardie Siding Products Company. A sample of the Hardipanel material was admitted into evidence at trial as City Exhibit 15. This sample contains a label with the following representations from the manufacturer:

- The Warmth of Wood and the Durability of Fiber-Cement
- 50-Year Limited Product warranty
- Resists Moisture Damage
- Low Maintenance
- Resists cracking, rotting or delaminating
- Withstands Termite Attack
- Non-Combustible

7. These representations by the manufacturer, as testified to by Mr. Bissonette, were not specifically contradicted by other testimony. The Court found them to be a credible basis for concluding that Hardipanel siding is a reliable, durable product. However, other witnesses provided credible testimony on the shortcomings of fiber cement board, including its relative brittleness and inability to exactly replicate all of the properties of wooden siding.

8. ALPH proposes to use a version of the Hardipanel material identified as "Cedarmill," which replicates the texture of cedar wood siding.

2

9.     Hardipanel is also available already painted or stained to specified colors. ALPH intends to install a pre-painted version of Hardipanel siding, in colors similar but not identical to the pre-existing siding.

10.     The Hardipanel fiber cement siding sample admitted into evidence at trial as Exhibit 15 is six inches in width and has a uniform thickness of one quarter inch. Hardipanel does not replicate the tapered thickness of wooden siding panels.

11.     Fiber cement siding such as Hardipanel is more brittle and susceptible to breaks or cracks than wooden siding. As a result, while wooden siding may be installed with the end pieces touching one another, fiber cement panels require that a small gap of up to 3/16 of an inch be left between panels, so that when expansion occurs the fiber cement panels are less likely to chip or break.

12.     ALPH proposes to install the Hardipanel to replicate as closely as possible the appearance of wooden siding. ALPH's principals concede, however, that Hardipanel cannot be installed to exactly match the revealed portion of wooden siding, particularly where the existing revealed portion of the wooden siding is only two and a half to three inches in width.

13.     ALPH's current proposal limits the use of the fiber cement board to replacing the horizontal/linear wood siding on the exterior of each of the three buildings.

14.     Each of the subject buildings contains wooden architectural details that are unique to and repeated within its neighborhood, including fish scale shingles, moldings, Cornish returns, trim pieces, distinctive railings and the like. ALPH represented at trial that it will repair, replace, and maintain these existing wooden exterior architectural details on each building.

15.     Each of the three subject properties has been designated as a historic structure, due to its inclusion on the Burlington Register of Historic Structures, a copy of which was admitted into evidence as City Exhibit 5.

16.     All of the subject properties are within the scope of the Design Review District, which is an overlay zoning district pursuant to § 3.2.3 of the City of Burlington Zoning Ordinance, as amended in April 2005 ("Ordinance").

**B.     The 63 King Street Building**

17.     The property which is the subject of Docket Number 30-2-08 Vtec is located at 63 King Street, in the Neighborhood Commercial Zoning District ("NC District").

18.     The 63 King Street building was built sometime between 1880 and 1900. It presently contains two residential apartments, with two bedrooms in each apartment. It is a wood-framed

3

structure with a slate roof. ALPH does not propose any change in the use or footprint of the structure in connection with this application.

19. The 63 King Street building was last painted six to seven years before this case went to trial. It currently appears in need of repair and maintenance. There are many areas where the paint has peeled away from the wooden siding; several sections of the wooden siding are damaged from rot or are split. The first two floors have an exterior wooden siding, all of which ALPH proposes to replace with Hardipanel siding.

20. The third floor of the 63 King Street building, which appears to contain an attic area within the roof peak, is sided with fish scale shaped wooden shingles.

21. There is a narrow front yard which contains an area of grass in the front of this building.

22. ALPH proposes to repair, replace where necessary, and repaint the fish scale shingles on the third floor and the wooden trim pieces on all floors.

**C.     The 65–69 King Street Building**

23. The property which is the subject of Docket Number 31-2-08 Vtec is located at 65–69 King Street and is adjacent to 63 King Street, in the same NC District. ALPH purchased both properties at the same time, from the same previous owner.

24. The 65–69 King Street building was built around 1890. It presently contains six apartments, each with two bedrooms. It is larger and taller than the 63 King Street building.

25. The 65–69 King Street building is three stories tall, with a flat roof. Its two side exteriors and its rear exterior contain horizontal/linear wooden siding, without detail pieces (other than wooden trim pieces). The front of the structure contains several wooden details, particularly on its first and third floors; there are wooden fish scale shingles on the upper portion of the top part of the front exterior. All windows are surrounded by wooden trim pieces; the second and third floor windows on the front exterior also have wooden shutters, some of which are broken, and all of which ALPH proposes to repair or replace with new wooden shutters.

26. The 65–69 King Street building also suffers from peeling paint and wooden siding that is in need of repair.

27. There is no front yard or discernable setback from the King Street sidewalk; the distances between this building and its neighboring buildings and common driveway are minimal.

28. ALPH proposes to make repairs or replacements where necessary to the wooden trim and detail pieces and then to repaint those architectural details. All horizontal/linear siding on all sides would be replaced with fiber cement board.

29. A prior owner of this property received zoning authority to replace the wooden siding with vinyl siding on the two sides and rear of this building.

**D. The 131 Archibald Street/7–9 Bright Street Building**

30. The property which is the subject of Docket Number 32-2-08 Vtec is located at the corner of Archibald and Bright Streets, in the General Commercial Zoning District ("GC District"). ALPH purchased this property about 11 years ago.

31. This corner lot building is a large two-story structure with a flat roof. It also contains residential apartments. Its size and presence on a corner lot adds to its prominence in its neighborhood.

32. ALPH first painted this building eight years ago. It was again repainted three years ago. When the paint started to again peel from the siding, APLH chose to remove the wooden siding and rotten casings from the building's exterior. This removal was done prior to receipt of any COA.

33. This property also has distinctive architectural details, most of which do not appear to have been removed with the linear siding. Some of the wooden trim pieces around the windows, on the corners or the building, and at the junction between the first and second floors appear to have been removed and would need to be replaced.

34. ALPH has pledged to replace and preserve the wooden architectural details on this building. As with the King Street buildings, ALPH proposes to repair, replace, repaint, and preserve these wooden details and to install the Hardipanel siding where there once was horizontal/linear wooden siding.

**E. Historical Significance of the Buildings**

35. The King Street properties are currently listed on the National Register of Historic Places Inventory, a portion of which was admitted at trial as City Exhibit 7.

36. Both of the King Street properties have been recognized as structures which contribute to the Battery-King Street National Register Historic District, a distinction recognized by the National Park Service, a subdivision of the U.S. Department of the Interior. (Id.)

37. King Street runs parallel to and south of Main Street. The neighborhood surrounding the subject King Street properties is a densely developed area, populated mostly by residential buildings, interspersed with commercial and some retail uses.

5

38.     Many King Street neighborhood properties contain the original materials of their exterior siding. This is particularly true for brick structures. Many nearby properties also continue to have their original wood clapboard siding. Some nearby properties have had their original siding replaced with vinyl or aluminum siding. Trial testimony revealed that some of this replacement siding has been installed without evidence of a zoning authorization.

39.     The King/Battery Street neighborhood and its buildings have benefitted from the City's efforts to preserve its historical character, particularly in the preservation of buildings and their unique exterior architectural details. There are multiple examples, however (including at the subject properties), where wooden siding has been compromised by wear and tear, including rotten or chipped clapboards and pealing paint.

40.     The Archibald/Bright Street property is in a portion of the GC District commonly known as the Old North End. While some of the architectural details unique to this neighborhood have been preserved or restored, many of the neighborhood buildings near the subject property have lost their original exterior materials and designs. The neighborhood has many examples of substitute siding materials, including vinyl, asphalt shingles, aluminum siding, and texture 1-11 wooden planking.

41.     The Archibald/Bright Street property represents one of the rare examples of historic integrity in its immediate neighborhood, having preserved its architectural details. It is a prominent structure that contributes to preserving the historic significance of its neighborhood, particularly because of its mass and prominence on this corner lot.

42.     The density of development and intensity of traffic in this neighborhood is evidenced by the condition of many of its neighborhood buildings. While there are some examples of well-maintained buildings, there is much more evidence of buildings in need of maintenance and repair. Efforts to restore and preserve the historic features of this neighborhood are evident on nearby buildings.

## Discussion

The City has declared the importance of preserving the historical integrity of several of its neighborhoods by enacting provisions within its Zoning Ordinance that control how a "structure may be erected, reconstructed, substantially altered, restored, moved, demolished, or changed in use or type of occupancy." Ordinance § 6.1.3. The DRB is charged with the authority of reviewing and approving designs of projects within the design review overlay district, and is guided by the criteria established in Ordinance § 6.1.10. By this appeal of the

6

DRB's adverse findings under § 6.1.10, this Court has been vested with the responsibility of determining whether ALPH's proposed substitution of fiber cement siding for the original wooden clapboard siding on each of the three subject properties conforms with the applicable Ordinance provisions.

Subsection (i) of Ordinance § 6.1.10, entitled "Protect Burlington's heritage," provides the controlling review criterion for proposals, such as ALPH's, to remove and replace exterior components from historic structures; it provides as follows:

> The removal or disruption of historic, traditional or significant, uses, structures or architectural features or neighborhood patterns shall be minimized insofar as practicable, whether these exist on the site or on adjacent properties. Significant structures and/or structures with important architectural features shall be identified by their inclusion in the Burlington Register of Historic Resources. New structures, additions, and alterations shall be sympathetic to and complement the scale and design of surrounding historic structures and locally significant buildings of architectural merit.

The Court has wrestled considerably with this language and the task of how to apply these standards to the facts of this case. The historical significance of each of ALPH's properties cannot be disputed, as each has been deemed so significant as to be included in the Burlington Register of Historic Resources. The importance placed upon the historical significance of the affected neighborhoods was shown at trial by the testimony elicited by the City, which the Court found to be credible and sincere.

But we cannot agree with the City's contention that the pending applications fail to protect Burlington's heritage. The Archibald/Bright Street building renovations provide a clear example of an effort to preserve a property, and by that help preserve the historic integrity of the immediate neighborhood. The neighboring properties evidence some neglected maintenance and many examples of substituted siding, some with little regard to the architectural details that once existed. While it is undisputed that some (although not all) of the substituted siding was installed without benefit of zoning authority, their existence in the Old North End establishes the present character of this neighborhood.

ALPH proposes, in connection with replacing the horizontal/linear wooden siding with fiber cement siding, to preserve, repair, replace where necessary, and repaint all wooden details on the Archibald/Bright Street building, which we understand to include the moldings, Cornish returns, and trim pieces along the roof line and on the front at the junction of the first and second floors, and the trim pieces at the building corners. These efforts will rehabilitate the building and

7

its historical characteristics. We commend ALPH's efforts to preserve these architectural details, particularly after two attempts to preserve the building's exterior over the course of eight years resulted in further deterioration and peeling paint.

Hardipanel siding will not exactly replicate wooden clapboards, particularly when viewed through the eyes of an historical or architectural expert. But we found credible ALPH's representations that Hardipanel can be installed to closely resemble clapboard siding, including the reveal portions. Further, with a warranty and life expectancy of up to fifty years, the fiber cement panels can maintain their integrity for many years longer than ALPH has already experienced in its efforts to maintain the existing wooden siding.

Given ALPH's modified plan, we conclude that it does not represent the removal or disruption of historic, traditional, or significant architectural features on these buildings or their surrounding neighborhood patterns. We deem ALPH's plans to be worthy of COAs, within the context of the existing neighborhood patterns and the historic architectural features that ALPH intends to preserve. While the proposed work includes the removal of original clapboards, we believe that the Hardipanel siding ALPH intends to use is of such a texture, quality, and durability, provided it is installed and maintained as represented, that it will not represent a significant departure from the historical significance of the building or its neighborhood.

Due the historic significance of the King Street buildings and their surrounding neighborhoods, Ordinance § 8.1.5 requires that we also give "specific consideration in reviewing [an applicant's plans] to the following" criteria:

   a. The historic and/or architectural value and significance of the structure and its relationship to the historic and/or architectural value of the surrounding area;

   b. The relationship of the exterior architectural features of the structure to the rest of the structure and to the surrounding area;

   c. The general compatibility of exterior design, arrangement, texture and materials proposed to be used; and/or

   d. To any other factor, including aesthetic factors, which it deems to be pertinent as delineated in the descriptions on file with the board.

Ordinance § 8.1.4.

ALPH satisfies these criteria because it proposes to keep all of the architectural details on the King Street properties and to use a high-quality replacement siding material. While some experts compared the Hardipanel to vinyl or aluminum siding, the material presented at trial does not support such a comparison. We conclude that the Hardipanel siding, as represented, will be

compatible both with the existing properties and the historic values the City seeks to preserve for this neighborhood, particularly in light of ALPH's pledge to restore and preserve the architectural details on the subject properties. The transformation of the properties from ones that regularly exhibit peeling paint and rotten or splintered wooden siding to ones that have their architectural features preserved with siding that simulates wooden clapboards, but not their neglect, is more likely to enhance the integrity the Ordinance seeks to maintain. For these reasons, we conclude that ALPH's plans, if completed as represented and if properly maintained, will conform to Articles 6 and 8 of the Burlington Zoning Ordinance.

## Conclusion

For all the reasons more fully discussed above, we conclude that the applications for Certificates of Appropriateness submitted on behalf of ALPH Realty for replacement of the wooden clapboard siding with fiber cement board siding on its properties located at 63 King Street, 65–69 King Street, and 131 Archibald Street/7–9 Bright Street are hereby **APPROVED**, subject to the following conditions:

1. The siding to be used shall be Hardipanel or its equivalent;

2. The fiber cement siding shall be installed in such a manner as to replicate wooden clapboard siding, including its reveals, as closely as possible;

3. ALPH, its successors and assigns shall maintain the installed siding and repair or replace any defects, cracks or broken panels that materially detract from its appearance; and

4. ALPH, its successors and assigns shall maintain all architectural details, including fish scale shingles, moldings, Cornish returns, trim pieces, distinctive railings and the like.

This completes the proceedings before this Court in these appeals. A Judgment Order accompanies this Decision.

Done at Berlin, Vermont this 30th day of January 2009.

_____
Thomas S. Durkin, Environmental Judge

9